## HOWE & al. *versus* WILDES & ux.

The promissory note of a married woman, being uncollectable at law, has long been held, in legal contemplation, to be of no value.

That rule was not changed by the statute of 1844, authorizing married women to "become seized and possessed of any property, real or personal, *by purchase.*"

A conveyance of land, made to a married woman in consideration of her promissory note for the purchase money, is without valid consideration, and therefore void, as to the then existing creditors of the grantor.

As against such creditors, the punctual payment of the note cannot impart any new vitality or strength to the conveyance.

In a writ of entry for land in fee, the declaration may be so amended as to claim merely a life estate, either in the whole or in a part of the land.

In the levy of land upon execution, it is the duty of the officer to notify the debtor and allow him a reasonable specified time, in which to appoint an appraiser.

It is not requisite that the officer, in his return upon the execution, should state what length of time was allowed, nor in what mode the notice was given.

The R. S. c. 94, § 11, prescribing that, when the debtor's estate is held in joint tenancy or in common with others, the debtor's part must be stated by the appraisers, applies when his apparent or known title extends only to an undivided part of the estate.

When the record shows that the debtor's title covers the whole land in fee, a levy of the whole will transfer whatever title he may have, though it be but a life estate in an undivided part.

ON REPORT, from *Nisi Prius*, SHEPLEY, C. J. presiding.

WRIT OF ENTRY. The land in controversy was a farm in Phipsburg.

Mary Wildes, one of the tenants, was, by the assignment to her of a mortgage, seized of one half of it, and was also, by inheritance, seized of one sixth of the other half, making in the whole seven twelfths of the farm. In these seven twelfths therefore, her husband, the other tenant, was seized of a life estate.

Samuel Wildes, the husband, executed a deed purporting to convey the farm to one Hill, by whom it was deeded to William H. Wildes, a son of the tenants. This son afterwards, in August, 1848, deeded the same to his mother, one of the tenants. The deed was duly executed and recorded. Though purporting to convey the whole, it really conveyed but a life estate in seven twelfths, that being all the interest he had. In the following month of Sept. 1848, the farm was attached on a writ in favor of these demandants against said William H. Wildes. In that action, the demandants recovered judgment, and on the execution levied and set off the farm to themselves in Dec. 1848, the tenants then and still being in possession.

This suit was brought to recover the possession. The demandants now move to amend by reducing their claim to a life estate in said seven twelfths. This amendment was resisted by the tenants.

The demandants thus claimed under William H. Wildes, but the record shows that, prior to their attachment, he had conveyed to his mother. To avoid the effect of that conveyance, the demandants offered to prove that it was fraudulent as to themselves, who were his creditors at the time of the conveyance. They thereupon called said William H. Wildes, as a witness, who testified that the consideration of his said conveyance to his mother was $800, paid by her notes to him for that amount; that he had transferred one of them, and that all but one had been paid. The demandants thereupon contended that the notes given by Mrs. Wildes, then a married woman, were no legal consideration for the

conveyance, and that, therefore the conveyance was invalid as to them, they being creditors of the grantor.

The case was then withdrawn from the jury and submitted to the Court, to grant or to refuse the amendment and to render judgment according to legal rights; the writ, deeds and record to be referred to as a part of the case. It was agreed that the fair rent of the farm yearly was $40. From the record, it appeared that the officer in his return of the levy, states that "he gave notice to Wildes," the execution debtor, "who refused to appoint one of the appraisers," wherefore the officer appointed one, in addition to one whom he had appointed before.

*Gilbert*, for the demandants.

*Tallman*, for the tenants.

The demandants have moved to amend, so as to declare for a life estate in seven twelfths of the farm. Such an amendment is not allowable. The estate to be declared for is an estate during the life of some one; of whom? The proposal is too indefinite. Besides the substituted claim would be another and distinct cause of action, and of a different nature. The statute is express, that the nature of the estate should be *specified* in the declaration, and such specification being the basis of the suit, cannot be changed.

But if the amendment obtain, the levy cannot be supported, for, —

1st, the statute provides, § 11, that "when the estate is held in joint tenancy or in common with others, the whole estate must be described by the appraisers, and the debtor's part so held, be so stated by them."

In this levy the debtor's share was not stated.

2d. The levy was inoperative, because in making it, the officer did not give to the defendants a "reasonable specified time," as the statute requires, in which to appoint an appraiser. The time of the notice as well as the notice itself, should appear in the return. R. S. c. 94, § 5; *Leonard* v. *Bryant*, 2 Cush. 37; *Tyler* v. *Smith*, 8 Met. 599.

The deed from William H. Wildes to his mother was made

in good faith, and for a consideration of real value; that is, the payment was made in her own notes, all of which it was proved she had paid in full, except one, and that in part, and the balance, has since been paid.

Does the circumstance that, when giving notes, which proved to be perfectly good, she was a married woman, show that the conveyance was without consideration, and therefore void as to creditors?

The notes were paid, and therefore the question does not arise whether they were collectable in law. They have had all the beneficial offices of collectable notes, for they have been paid. Is not a voluntary, as useful as a compulsory payment? Is it the payment, or the legal power to compel payment, which gives the value?

But the rigid rule of ancient law, that a married woman can make no valid contract, has yielded much to the higher and more expanded views of this age, in regard to female rights. True, even in this land and at this day, the barbarism of feudal times, as to married women, finds too much sanction in the law. But that barbarism is fading out and disappearing, though too slowly. The enlightenments and the humanities of the age have demanded redress. That demand *will* be heard and regarded, *even in courts of law*, and among the most bigoted devotees of the black letter code. Bracton's days are not these days.

In the case of *Deane* v. *Richmond*, 5 Pick. 462, the Court, on account of its manifest injustice, expressly abrogate the rule of the common law, and decide that a married woman may maintain an action for her own property, when otherwise manifest wrong would be done.

By the statute of this State of 1844, c. 117, § 1, "any married woman may become seized or possessed of any property, &c. by purchase," &c.

This statute makes the wife a new creature; it gives her a separate existence. For if her existence is merged in that of the husband, her property must necessarily become his property.

Vol. xxxiv.          72

The statute confers the right of obtaining property by purchase. How can this be accomplished without the ability to make a valid contract? 4 Kent's Com. 440, 441. If there be ability to purchase, there must be ability to pay. If so, there is no restriction, which excludes the paying in one's own notes. If she take a note, can she not enforce it? If she should bring a suit, might she not give a bond, or other contract concerning the suit?

These views, we respectfully submit, lead to the conclusion that the conveyance from W. H. Wildes to his mother was effectual, and that these demandants took nothing by their levy.

Rice, J. — This is a writ of entry in which the demandants claimed to recover the demanded premises in fee simple. They now ask leave to amend their declaration by reducing their claim to a life estate in seven-twelfths of the farm demanded in their original writ. To this amendment the respondents object.

By the proposed amendment the claim of the demandants will be materially diminished and cannot therefore be prejudicial to the respondents. Such amendments are allowable. *Plummer* v. *Walker*, 24 Maine, 14; *Dewey* v. *Brown*, 2 Pick. 387; *Lounsbury* v. *Ball*, 12 Wend. 247; *Baker* v. *Daniel*, 1 Marsh, 537; 6 Taunt. 193.

The demandants claim title by virtue of a levy upon the premises as the estate of Wm. H. Wildes, who, prior to the levy, had conveyed to his mother, Mary Wildes, wife of the tenant, and had received as a consideration, the promissory notes of said Mary, amounting to eight hundred dollars.

From the facts in the case the Court finds that Wm. H. Wildes at the date of his deed to Mary Wildes was seized of a life estate in seven twelfths of the demanded premises, to hold during the natural life of Samuel Wildes, the tenant, which seven twelfths the demandants are entitled to recover, if this action can be maintained.

By the demandants it is contended, that the notes of Mary

Wildes, which were given as a consideration for the deed from Wm. H. Wildes to her, were of no legal validity, and that consequently there was no sufficient consideration for that deed, which is therefore fraudulent and void as to them, they being at the time, creditors of William H. as whose property the estate had been levied upon by them.

To this the tenants reply, that the consideration should be held sufficient, as the case finds that all these notes, but one, have been paid, and that by the rules of the common law, as they should be construed by modern courts of justice, and as they are modified by statutes, Mary Wildes, though a married woman, was fully authorized to enter into and bind herself by contract.

It is the legitimate province of courts to declare the law. They possess no legislative powers. They are required to determine what the law is, not what it should be. If existing laws are defective, or erroneous in principle it is for the legislature to correct or modify them.

By the common law as well as by statute provision the rights and powers of married women are too well defined to admit of doubt, or to be subject to material modification by mere judicial construction. A married woman has, in general, no power or capacity to contract so as to sue or be sued, either with, or without her husband, on her contracts made during coverture. She has in legal contemplation no separate existence, her husband and herself being in contemplation of law one person. Chitty on Contracts, 167; 1 Black. Com. 442; Com. Dig. Baron & Feme, W. Pleader, 2 A; Story on Con. § 94; Story's Eq. Juris. § 1367.

A married woman cannot be a party to a bill of exchange, promissory note, or other contract so as to charge herself to liability in a court of law, although she may be living apart from her husband, and have a separate maintenance secured to her. Chitty on Bills, 33; Story on Promissory notes, § 85; Baily on Bills, c. 2, § 3; *Edwards* v. *Davis*, 16 Johns. 281; Com. Dig. Baron & Feme.

To these general rules of the common law there are cer-

tain exceptions, none of which however affect the case at bar.

It is entirely certain that at common law the promissory note of a married woman, as a general proposition, was absolutely void, and being void could not constitute a legal consideration to uphold a deed for the conveyance of valuable real estate.

Nor can the fact that some of those notes were subsequently paid, change the rights of the parties in this case. These rights were fixed by the condition of things existing at the time of the transaction.

The statute of 1844, c. 117, § 1, provides that "any married woman may become seized and possessed of any property real or personal, by direct bequest, demise, gift, purchase or distribution in her own name and as of her own property ;" and to this provision the statute of 1847, c. 27, adds, " exempt from the contracts or debts of the husband." These provisions are subject to certain qualifications contained ·in· the statutes referred to, and modified by subsequent statutes.

It is contended that inasmuch as the statute thus authorizes married women to become seized and possessed of real estate by *purchase*, it must by necessary implication authorize such women to enter into contracts of bargain and sale, and must also carry with it all the rights usually exercised by those making such contracts including the right to make and execute promissory notes in payment of estate thus purchased.

Such a construction would manifestly extend these statutory provisions much beyond the limits contemplated by the Legislature and would overturn well established rules of law defining the rights of married women.

" Purchase, in its most enlarged and technical sense, signifies the lawful acquisition of real estate by any means whatever, except by descent." Bouv. Law Dict. 311. " There are six ways of acquiring title by purchase; 1, by deed; 2, by devise; 3, by execution; 4, by prescription; 5, by possession or occupancy; 6, by escheat." *Ib.* It therefore

by no means follows that because the statute authorizes a married woman to hold real estate by purchase, that she must be authorized to acquire title thereto by bargain and sale, or to pay the consideration therefor by her promissory notes.

The intention of the legislature appears to have been to annul that rule of the common law by which the husband, by marriage, became the owner of the personal property of the wife, and entitled to receive the income of her real estate ; and to protect her property by declaring it to be exempt from any liability for the debts and contracts of the husband. There does not appear to have been any language used in the Act, with a design to remove the disabilities imposed by the common law upon a *feme covert*, and to enable her, contrary to its rules, to make sales and purchases of property. *Swift* v. *Luce*, 27 Maine, 285.

These statutes being in derogation of the common law, are not to be extended by implication beyond their express provisions. The notes referred to were therefore given by a person having no power to bind herself by such contracts and are consequently void, and could constitute no legal consideration for the deed of William H. Wildes to Mary Wildes.

But it is further contended, that should the Court come to the conclusion that the deed from William H. Wildes to his mother was without consideration, still the demandants should not prevail. This being a writ of entry, if they prevail, it must be upon the strength of their own title, and not upon defects in the title of the tenants. And it is objected that the levy under which the demandants claim is defective in that the appraisers do not state the debtor's share or part of the estate levied upon, and because the officer does not, in his return, state that he allowed the debtor a reasonable *specified time*, within which to appoint an appraiser before proceeding to appoint one in his behalf.

So far as the records exhibited the title of William H. Wildes, that title extended to and covered the whole estate, and the levy was made upon the whole in conformity with his recorded title. With this he could not complain. R. S. c. 94,

§ 10, provides that "all the debtor's interest shall pass by the levy, unless it be greater than the estate mentioned in the appraiser's description." Here the debtor's interest was less both in quantity and quality than described by the appraisers.

The provisions of § 11, c. 94, apply when the debtor's apparent or known title extends only to an undivided part or portion of the estate. In such cases it is necessary that the whole estate should be described by the appraisers, and the debtor's share or part thereof stated by them. The construction contended for by the tenants would subject creditors to unreasonable hazard, and liability to loss.

The officer states in his return that before he proceeded to appoint an appraiser to act in behalf of the debtor, he "gave notice to the said Wildes, one of the said debtors, and he refused to appoint one of the appraisers." By the provisions of the statute, the debtor had a right to appoint one of the appraisers and was entitled to a reasonable specified time within which to make the appointment. This was a right, however, which he was not obliged to exercise, and which he might waive. By refusing to appoint, when notified by the officer, he must be deemed to have waived the right the law gave him, and after such refusal the officer might well proceed, without unnecessary delay, to have the estate appraised and the levy completed. According to the stipulations in the report, the demandants may amend the declaration so as to demand seven undivided twelfth parts of the premises described, to hold the same during the natural life of Samuel Wildes, and they are entitled to receive for rents and profits at the rate of twenty-three dollars and thirty-four cents per year, since the title accrued to them, and upon these principles the demandants are to have judgment.

SHEPLEY, C. J., and TENNEY and HOWARD, J. J., concurred.